IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

UNITED STATES OF AMERICA, *ex rel.*
LORI DOYLE,

      Plaintiff/Relator,

v.                                        No. CIV O1-1361 BB/LFG

ALL INDIAN PUEBLO COUNCIL, INC.,
a domestic non-profit corporation, AMADEO SHIJE,
VOLELLE ZAMORA, and ERIC OLSON,

      Defendants.


## MEMORANDUM OPINION AND ORDER

      This matter comes before the Court for consideration of two motions filed by Defendants: a motion for summary judgment (Doc. 76) and a motion to strike exhibits (Doc. 82). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that both motions will be granted in part and denied in part.

      **Summary of the Facts:** Relator Lori Doyle ("Doyle") was employed by Defendant All Indian Pueblo Council, Inc. ("AIPCI") as director of administrative services from December 18, 2000 to June 25, 2002.  AIPCI is a nonprofit corporation created by the 19 pueblos located in New Mexico, with a board of directors consisting of the governors of those pueblos. AIPCI was created for the purpose of operating a number of federally funded programs. Doyle maintains she was harassed and fired in retaliation for reporting misuse of federal funds, and raises a claim under the retaliation provision of the federal False Claims Act ("FCA"), 31 U.S.C. § 3730(h), as well as a state-law claim for retaliatory discharge. Defendants have moved for summary judgment. Doyle filed a response to that motion, and Defendants have moved to strike a number of the

exhibits attached to Doyle's response. The Court will address the motion to strike first, because the Court's rulings on that motion will determine what evidence may be considered for purposes of the summary-judgment motion.

**Motion to Strike:** Defendants originally moved to strike twelve exhibits;[1] following Plaintiff's response, Defendants withdrew their objections to two of the exhibits. Defendants continued to explicitly object to eight of the exhibits, and said nothing about the remaining four. Therefore, the Court will address the following exhibits to Doyle's summary-judgment response brief: Exhibits 2, 3, 8, 9, 14, 16, 18, 19, 20, and 22, as well as Doyle's incorporation-by-reference of a section of a brief filed in a different case in this district.

Defendants' first objection to the exhibits is global; they claim the exhibits were not attached to an affidavit as required by Rule 56 of the federal rules of civil procedure, and therefore lack any foundation for admissibility. However, for purposes of a summary judgment motion, it is only documents the party wishes to authenticate through personal knowledge that must be attached to an affidavit detailing such knowledge. *Orr v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002). A proper foundation for other documents may be established in any manner permitted by Rules 901 or 902 of the federal rules of evidence. *Id.* The mere fact that Doyle's exhibits were attached to her response memorandum, rather than an affidavit, is not grounds for striking them, if their authenticity can be established through means other than personal knowledge.

---

[1] The list of exhibits challenged on the first page of Defendants' brief enumerates only eleven exhibits; however, in the body of the brief Defendants challenge exhibit 14 as well, which was not initially listed as a challenged exhibit.

The more important issue with respect to most of the exhibits, then, is authentication. Defendants claim that exhibits 2 and 3, job descriptions bearing the name of AIPCI and appearing to refer to Doyle's position and Defendant Shije's position, have not been sufficiently authenticated to be considered by the Court. Defendants make this argument despite the fact that Doyle, in an affidavit attached to her response, identified Exhibit 2 as the job description handed to her when she began work at AIPCI, and identified Exhibit 3 as being found in AIPCI's files. Furthermore, each job description states at the beginning of the document that it is an "AIPC, INC. JOB DESCRIPTION." It must be remembered that the authenticity requirement contained in the federal rules requires only "evidence sufficient to support a finding that the matter in question is what its proponent claims." F.R.E. Rule 901(a). There is more than sufficient information to authenticate each document for summary judgment purposes. *See Perez v. Alcoa Fujikura, Ltd.*, 969 F.Supp. 991, 998-99 (W.D. Tex. 1997); F.R.E. Rule 901(b)(4) (distinctive characteristics of a piece of evidence may authenticate it); *cf. Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1423 (10th Cir. 1991) (document prepared on co-defendant's letterhead and produced during discovery was sufficiently authenticated).[2]

Exhibits 8 and 9 are print-outs of e-mail messages from Defendant Olson to Defendant Zamora. These print-outs identify the sender and the recipient by name, provide the sender's e-mail address, and provide the dates and times they were sent. This information is sufficient to authenticate the documents. *See, e.g., United States v. Siddiqi*, 235 F.3d 1318, 1322-23 (11th

---

[2]Defendants' argument that the job descriptions are dated two or more years before Doyle started working for AIPCI is specious. That fact affects the weight of the evidence, not its admissibility, and the Court notes Defendants have not produced any evidence indicating these job descriptions had been superceded by the time Doyle or Shije assumed her or his position within the organization.

Cir. 2000) (e-mail printouts sufficiently authenticated); *United States v. Simpson*, 152 F.3d 1241, 1250 (10th Cir. 1998) (printout of chat room discussion sufficiently authenticated); *Fenje v. Feld*, 301 F.Supp.2d 781, 809 (N.D. Ill. 2003) (e-mail communications may be authenticated in several ways).

Exhibit 14 is a copy of a letter written on a letterhead of the Office of the Chairman of the All Indian Pueblo Council. The letter is signed by Frederick Vigil, Chairman of the Council. The letter refers to Defendant Shije and Doyle. This letter has sufficiently unique characteristics to authenticate it, despite the lack of an affidavit from the author of the letter. *See Denison, supra*. The fact that the letter is admissible, however, does not automatically make all of the contents of the letter admissible; portions of the letter are clearly hearsay, and the Court has not considered these portions in deciding the motion for summary judgment.

Exhibit 16 is a copy of a note written on a medical prescription form, signed by a person whose signature is illegible. The fact that it was written on a printed form, which is similar to a letterhead, augurs in favor of a finding of authenticity; the fact that the writer's identity cannot be determined augurs against such a finding. The Court need not decide at this time, however, whether the note would be admissible evidence. The contents of the note are not relevant to any issue raised in the motion for summary judgment, and the Court has therefore not considered those contents in making a decision on the motion.[3]

Defendants' objections to Exhibits 18 and 19 are not based on lack of authenticity, but on Doyle's failure to produce those documents during discovery. Exhibit 18 is an "Employment

---

[3] Doyle cited the exhibit only once in her response, as evidence that she was under a doctor's care as a result of harassment by Defendants. Whether she was under such care, and for what reason, are issues irrelevant to the grounds for summary judgment argued by Defendants.

Agreement" signed by Frederick Vigil and Doyle, dated May 24, 2002. Doyle's affidavit in support of her response explains that she did not provide this document to Defendants initially because she could not find a copy of this agreement, and had to obtain it from another former employee of AIPCI. The Court finds nothing in the record to contradict this assertion. To alleviate any prejudice to Defendants, however, the Court will grant Defendants' request to reopen Doyle's deposition to question her about the agreement. As to Exhibit 19, a performance evaluation of Doyle dated March 18, 2001, Doyle's counsel indicated in the response brief that he sent an e-mail to defense counsel informing defense counsel that the evaluation should have been included in documents provided during discovery. Doyle's counsel also indicated that defense counsel acknowledged having a copy of the document. Defense counsel did not contradict that assertion in the reply brief, and since it is an AIPCI document it appears likely defense counsel does have it. The Court will therefore deny the motion to strike as to this document. If there is still some dispute about whether Doyle provided this document to Defendants, or whether Defendants have it from some other source, Defendants will be allowed to question Doyle about this document as well, during the reopened deposition.

Exhibit 20 is a copy of the minutes of a board meeting, held by the board of directors of AIPCI on October 31, 2001. The first page of the document contains the insignia of the All Indian Pueblo Council, and identifies the document as minutes of a meeting of the AIPCI directors. Despite this, Defendants claim the document has not been sufficiently authenticated. The Court disagrees, and finds there are sufficient circumstances here allowing the Court to determine that the document "is what its proponent claims." Rule 901(a).

Exhibit 22 is Doyle's affidavit. In the reply brief, Defendants have narrowed their challenge to this exhibit to paragraph seven of the affidavit, alleging the paragraph is hearsay. It appears, however, that the statements in this paragraph may qualify as an admission by a party. Doyle claims that Harley Coriz "of AIPCI" telephoned Accountemps and spoke to Doyle, telling her that AIPCI needed a temporary accountant. At this point, therefore, it appears Coriz was an employee of AIPCI and made a statement within the course and scope of his employment. Such statements are not hearsay and are admissible as admissions of a party. *See Abuan v. Level 3 Communications, Inc.*, 363 F.3d 1158, 1171-71 (10th Cir. 2003).[4]

Defendants' final objection is to Doyle's reference to a brief filed in a different case, addressing an identical argument to one made by Defendants in this case. Defendants maintain Doyle is attempting to incorporate portions of that brief by reference, and thereby evade the page limitations imposed by the local rules. The Court appreciates being apprised of cases in this district in which identical or similar issues have been raised and briefed. However, the manner in which Doyle discussed the similar case does make it appear that Doyle is attempting to incorporate by reference the argument made in that other case, and doing so would exceed the page limits imposed by the local rules. D.N.M.L.R. 7.7 (response brief must not exceed 24 pages). However, as should be clear from the above discussion of the exhibits, Defendants have raised some objections that are completely without merit and are simply a waste of the parties' and the Court's time and effort. This is a more serious violation of the spirit of the rules than an

---

[4]The Court notes, however, that the contents of paragraph 7 do not appear to be relevant to any of the issues raised in the motion for summary judgment. The point of paragraph 7 appears to be to show that AIPCI did not cease operations at the time Doyle was fired. Whether such a cessation occurred, however, has nothing to do with the grounds upon which Defendants seek summary judgment, which are discussed below.

6

attempt to circumvent page limitations by incorporation. For that reason, the Court will deny Defendants' attempt to strike Doyle's reference to a brief filed in a different case.

The Court strongly encourages the parties to refrain from over-litigating this case.

**Motion for Summary Judgment – Standard of Review:** "Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." Id. On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "Nevertheless, a jury question does not exist because of the presence of a mere scintilla of evidence; rather, there must be a conflict in substantial evidence to create a jury question." Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995). The Court will consider Defendants' motion in light of these standards.

**Motion for Summary Judgment -- Merits:** Defendants make three main arguments in support of their motion for summary judgment. First, they contend the individual Defendants are not proper defendants for purposes of either the federal retaliation claim or the state-law retaliation claim. Second, they argue that Doyle cannot bring a claim under the FCA's anti-retaliation provision because her activities were not "in furtherance of" a lawsuit under the FCA. Finally, they maintain in essence that Doyle's state-law claim duplicates her FCA claim, and that

New Mexico would not recognize a claim for discharge in violation of public policy due to that duplication.

**Individual Defendants:** The individual Defendants contend they cannot be held liable under the FCA's anti-retaliation provision, citing *Siewick v. Jamieson Science and Eng'g, Inc.*, 322 F.3d 738, 740 (D.C. Cir. 2003). Doyle agrees that individuals generally may not be considered "employers" for purposes of the FCA and therefore may not be held liable for retaliatory discharge under that statute. Doyle argues, however, that where an individual corporate officer or director dominates or directs the affairs of a corporation, in order to benefit that individual personally, the individual can be held liable for retaliatory discharge under the FCA. *See Palladino v. VNA of Southern New Jersey*, 68 F.Supp.2d 455, 464-65 (D. N.J. 1999) (discussing such possibility). In other words, if the requirements for piercing the corporate veil are present, the dominant officer or director might be considered the employee's de facto employer for purposes of the FCA. *Id.; see also Siewick v. Jamieson Science and Eng'g, Inc.,* 191 F.Supp.2d 17, 20-22 (D. D.C. 2002) (applying federal veil-piercing standard to determine whether supervisor should be considered plaintiff's employer for purposes of FCA anti-retaliation provision).

The Court need not decide whether piercing the corporate veil would allow an individual corporate officer or director to be held liable under the FCA. The evidence Doyle has submitted is not sufficient to raise an issue of fact as to whether any of the individual Defendants so dominated and controlled the actions of AIPCI as to justify piercing the corporate veil. In the Tenth Circuit, the requirements for such piercing are as follows: (1) there must be such unity of interest and lack of respect given to the separate identity of the corporation by its shareholders

that the personalities and assets of the corporation and the individual are indistinct; and (2) adherence to the corporate fiction must sanction a fraud, promote injustice, or lead to an evasion of legal obligations. *Nat'l Labor Relations Bd. v. Greater Kansas City Roofing*, 2 F.3d 1047, 1052 (10th Cir. 1993). Doyle has presented no evidence of intermingling of any individual Defendant's funds with AIPCI's funds; no evidence that the Board of Directors of AIPCI, consisting of the governors of New Mexico's pueblos, was not an independent decisionmaker but instead was dominated by any individual Defendant; and no evidence indicating in general that there was a "lack of respect" for the separate identity of the corporation by its shareholders, the pueblos. Summary judgment will therefore be granted in favor of the individual Defendants on Doyle's FCA claim.

     The analysis concerning the state-law retaliatory discharge claim does not appear to be the same as the veil-piercing analysis applied to FCA claims. In *Bourgeous v. Horizon Healthcare Corp.*, 117 N.M. 434, 437-38 (1994), the New Mexico Supreme Court stated as follows: "[w]e leave open the question whether a retaliatory discharge claim lies against a supervisor, agent, or coemployee if the firing was an intentional act done solely for the supervisor, agent, or coemployee's own interest and therefore outside the scope of employment." The Supreme Court therefore left open the possibility that such a cause of action might be viable against an individual corporate employee, such as Defendant Shije, who fires an employee under the circumstances outlined by that Court. The Court has not been able to find any later case deciding the question left open in *Bourgeous*. For purposes of this opinion, therefore, the Court will assume that New

9

Mexico would allow a retaliatory-discharge action against an individual under the narrow circumstances stated in *Bourgeous*.[5]

The Court must, then, decide whether Doyle has produced sufficient evidence to raise an issue of fact as to whether any of the individual Defendants fired Doyle solely for his own benefit, outside the scope of employment. It is immediately apparent that Defendants Olson and Zamora, who were not even employed by AIPCI at the time Doyle was fired, had no authority to fire her and may not be held liable for the tort of retaliatory discharge. As to Defendant Shije, however, a careful examination of the facts is necessary. As the *Bourgeous* opinion points out, "it is difficult to see how a retaliatory discharge cause of action would apply to the individual defendants acting in the course and scope of their employment..." *Id.*, 117 N.M. at 437. Therefore, there must be evidence that the supervisor's actions were so extreme and so limited to personally benefitting the supervisor that the supervisor would be considered to be acting outside the scope of his employment when he discharged the employee. *Id.*

No such evidence has been presented in this case. There is evidence that Defendant Shije wanted to protect the status quo, in which funds from various federal sources were in effect commingled with the funds of AIPCI's parent organization, and spent by AIPCI or the parent organization for purposes other than those intended by the funding agencies. [Exhs. 10, 12, 13,

---

[5]It is by no means clear that this is true; the Court notes that the one case cited by the New Mexico Supreme Court in *Bourgeous*, for the proposition that a supervisor might be held personally liable for a retaliatory discharge, has been overruled by the Illinois Supreme Court. *Buckner v. Atlantic Plant Maintenance, Inc.*, 694 N.E.2d 565, 568-70 (Ill. 1998), *overruling Fellhauer v. City of Geneva*, 546 N.E.2d 791 (Ill. App. 1989). Several other courts, in addition to *Buckner*, have held that logically, only an employer can discharge an employee, so logically only an employer can be liable for a wrongful discharge, at least in the absence of statutory language to the contrary. *See, e.g., Rebarchek v. Farmers Cooperative Elevator*, 35 P.3d 892, 904 (Kan. 2001).

22, 24] There is also evidence that Shije pressured Doyle to continue the practice of using funds from one agency to pay a debt owed to another agency, and to refrain from informing the funding agencies that their funds had been misallocated. [*Id.*] There is no evidence at all, however, that Defendant Shije profited personally from any of the financial dealings engaged in by AIPCI. In addition, there is no evidence contradicting the fact that Shije's actions could have been helpful to AIPCI; as long as the funding agencies did not find out about the problems at AIPCI, the future funding of AIPCI's programs would not be jeopardized, and AIPCI would not be faced with having to pay back large amounts of money that had been misspent. In sum, there is insufficient evidence to raise a genuine issue of fact as to whether Shije's act of firing Doyle was done solely for his benefit, or was intended to benefit AIPCI as well, by allowing the organization to continue to receive funding to operate its programs. Absent such evidence, Doyle has not raised a genuine issue of fact as to the existence in this case of the limited circumstances under which an individual supervisor might be held liable for retaliatory discharge in violation of public policy. Summary judgment will therefore be granted to Defendant Shije, as well as the other individual Defendants, on the state-law retaliatory discharge claim.

**FCA's "in furtherance of" requirement:** The anti-retaliation provision of the FCA states that an employee may not be retaliated against for actions taken "in furtherance of an action under this section..." 31 U.S.C. § 3730(h). Defendants contend Doyle cannot meet this "in furtherance of" requirement, for two reasons: (1) Defendants point out there is no evidence that, at the time Doyle was fired, any Defendant knew Doyle had filed an FCA claim or was planning on filing such a claim, and argue that such knowledge is necessary to support an FCA retaliation

claim; and (2) Defendants maintain that all of Doyle's actions were simply part of her job, and actions taken as part of an employee's job cannot satisfy the "in furtherance of" requirement.

Defendants first note that no Defendant knew Doyle had filed this FCA lawsuit at the time she was fired. The applicable case law, however, indicates an employer need not know of an actual, pending FCA case in order to be found in violation of the FCA's anti-retaliation provision; in fact, such a case need not have ever been filed. *See, e.g., Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996) ("We emphasize that an individual need not actually file a *qui tam* action in order to maintain a claim under section 3730(h)...")*; Yesudian v. Howard University*, 153 F.3d 731, 740 (D.C. Cir. 1998) (district court erred in holding that plaintiff's conduct was unprotected because he never filed an FCA lawsuit; it is sufficient if the plaintiff was investigating matters that reasonably could lead to such a case); *Neal v. Honeywell Inc.*, 33 F.3d 860, 863-64 (7th Cir. 1994) (FCA retaliation claim may be viable even though employee did not file suit under the FCA; sufficient if such a suit could have been filed consistent with Rule 11).

Defendants argue that, at minimum, they must have known that Doyle planned to file an FCA claim in order to have retaliated against her in violation of the FCA. This argument is also contrary to the established case law. It is not necessary for an employer to know that an employee specifically plans to file a *qui tam* lawsuit under the FCA, or is investigating for the purpose of preparing such a lawsuit. In fact, an employee may be protected by the anti-retaliation provision of the FCA even if the employee did not know about the FCA when she took the actions that led to her dismissal. *See Fanslow v. Chicago Mfg. Center, Inc.*, 384 F.3d 469, 479-80 (7th Cir. 2004) (relevant inquiry in deciding whether employee's actions are protected by FCA is whether reasonable employee in similar circumstances might believe employer is committing

fraud against the government). Instead, an employee's actions are protected by the FCA if the employee is performing investigation or taking other action that could reasonably lead to a viable FCA lawsuit. *See Yesudian, supra*; *Neal, supra*; *cf. Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 519, 535 (10th Cir. 2000) (district court properly denied motion for judgment as a matter of law on FCA retaliation claim, where there was evidence the plaintiff complained to government official about her employer's actions; firing as a result of this complaint was sufficient to support jury's verdict). Significantly, the action that is often sufficient to constitute protected conduct under the FCA is reporting fraud or other problems to federal officials, which could trigger an investigation that would ultimately lead to an FCA lawsuit. *See Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1261-62 (D.C. Cir. 2004); *Shaw, supra; Neal, supra; cf. Ramseyer, supra*, 90 F.3d at 1523 (plaintiff failed to state a retaliation claim under the FCA, in part because she had made no suggestion, prior to the alleged retaliation, that she was going to report noncompliance with government requirements to government officials). In this case, there is evidence that Doyle informed several different federal officials about the problems AIPCI was having with misusing federal grant monies. [Resp., Exhs. 10, 22, 24] There is also evidence that Defendant Shije knew about Doyle's actions and was extremely displeased about her communications to the government officials. [*Id.*, Exhs. 22, 24] This is sufficient to support an FCA retaliation claim, even without specific knowledge that Doyle planned to file a *qui tam* lawsuit under the FCA.

     Defendants' remaining argument concerning the FCA claim is that, in discovering and reporting the various instances of misallocation of federal funds, Doyle was merely performing her job. Therefore, according to Defendants, her actions could not have put Defendants on notice as

13

to the possibility of an FCA claim, and her retaliation claim must fail as a matter of law.  It is true that where an employee is merely performing her job duties, and as part of those duties informs her employer of potential problems with the federal government, there is a presumption that the employee was merely acting in accordance with her employment obligations.  In such a case, something more is necessary to put the employer on notice of the possibility of an FCA claim. *See, e.g., Martin-Baker Aircraft, supra; Ramseyer, supra,* 90 F.3d at 1523.  However, in every case this Court has reviewed, the "something more" requirement has been met when an employee has reported contractual violations to a government official, or otherwise complained to such an official about her employer's failures to meet government requirements.  *See Martin-Baker* (where an employee alerts a party outside the chain of command, such action may suffice to notify the employer that the employee is engaged in protected conduct)*; Brandon v. Anesthesia & Pain Management Assocs., Ltd.*, 277 F.3d 936, 944-45 (7th Cir. 2002) (distinguishing between reporting violations solely in-house and reporting them, or threatening to report them, to federal officials); *Shaw, supra; Neal, supra; cf. Ramseyer* (suggesting that the plaintiff's conduct would have been protected if she had notified her employer she planned to report noncompliance to government officials).  As pointed out above, there is evidence in this case that Doyle reported grant-usage problems to several different government officials, and that Defendant Shije knew of her actions and was angry about them.  The Court therefore finds Doyle has raised a question of fact as to whether her actions were taken "in furtherance of" an FCA claim and were protected under the anti-retaliation provision of that statute.

**Retaliation in Violation of Public Policy:**  Defendants have also moved for summary judgment on Doyle's state-law claim for retaliatory discharge.  Defendants make two arguments

14

in support of their motion: first, that Doyle has not identified any "mandate of public policy" that could support a public-policy-based claim of retaliatory discharge; and second, that the FCA's anti-retaliation provision provides a remedy for retaliatory discharge, so New Mexico would not recognize a cause of action that duplicates the protections of that provision.

Defendants' first assertion is surprising, given the fact that this case involves a claim that Doyle was discharged for reporting AIPCI's misuse of federal funds to federal officials. In the first New Mexico case recognizing the tort of retaliatory discharge of an at-will employee, the New Mexico Court of Appeals stated as follows: "[t]hat misuse of public money contravenes state public policy cannot be doubted...New Mexico public policy condemns not only misuse of state money, but misuse of federal money as well." *Vigil v. Arzola*, 699 P.2d 613, 621 (N.M. App. 1983) (citations omitted). In *Vigil*, the plaintiff alleged he was fired for reporting the misuse of federal funds to his employer's board of directors, and the Court of Appeals determined the plaintiff had identified a specific expression of public policy sufficient to support his retaliatory-discharge claim. In the present case, Doyle claims she was fired for reporting the misuse of federal funds to federal officials. *Vigil* is directly on point, and the Court holds that Doyle has identified the "clear mandate of public policy" that is necessary to support her claim of retaliatory discharge. *Vigil*, 699 P.2d at 619 (retaliatory-discharge cause of action exists only when employee's discharge violates a clear mandate of public policy).

Defendants' second argument is more difficult to resolve, due to conflicting precedent from New Mexico state courts and decisions in this District. Defendants point to cases such as *McDonald v. Corrections Corp. of America*, 181 F.Supp.2d 1274, 1282-83 (D.N.M. 2002), and *Salazar v. Furr's, Inc.*, 629 F.Supp. 1403, 1408 (D.N.M. 1986), which have held that a claim for

retaliatory discharge is not available where other remedies are available to vindicate the alleged public policy violation.  However, in *Gandy v. Wal-Mart Stores, Inc.*, 872 P.2d 859, 863-64 (N.M. 1994), the New Mexico Supreme Court held that the tort of retaliatory discharge could be maintained even though the source of the claimed public-policy violation was New Mexico's Human Rights Act, NMSA § § 28-1-1 *et seq.*, which provides its own remedies for violations of the statute.  The Supreme Court so held despite explicitly mentioning the language in *Salazar, supra,* that a cause of action should not be recognized where a remedy other than the retaliatory-discharge tort is available to redress the discharge.  872 P.2d at 860.  *Cf. Gutierrez v. Sundance Indian Jewelry*, 868 P.2d 1266, 1274 (N.M. App. 1993) (legislature must be shown to have intended to provide exclusive, rather than parallel, remedy).

    Since the retaliatory-discharge cause of action is based on New Mexico law, in determining the contours of that claim the Court is bound by the pronouncements of the New Mexico Supreme Court rather than previous decisions from this District.  *See County of Santa Fe v. Public Service Co. of New Mexico*, 311 F.3d 1031, 1035 (10th Cir. 2002).  The Court therefore holds that the existence of the remedy provided by the FCA does not preclude the recognition of a claim for retaliatory discharge in violation of public policy, where the basis of the

claim is the policy against misuse of federal funds.[6] The Court will therefore deny the motion for summary judgment on this claim.

**Conclusion:** Based on the foregoing, the individual Defendants will be dismissed from this case. In addition, the motion to strike exhibits will be denied for the most part, except as noted. Finally, the motion for summary judgment will be denied as to Doyle's FCA claim and her state-law retaliatory-discharge claim, and those cases will be allowed to proceed against Defendant AIPCI.

## ORDER

Based on the foregoing Memorandum Opinion, it is hereby ORDERED that Defendants' motion for summary judgment (Doc. 76) be, and hereby is, GRANTED in part and DENIED in part, and Defendants' motion to strike exhibits (Doc. 82) be, and hereby is, GRANTED in part and DENIED in part.

---

[6]The Court notes that Judge Johnson recently decided this exact issue, in the FCA context, by following *Gandy* rather than *McDonald* and *Salazar*. *Bespalko v. Sandia Corp., Inc.,* 99 CIV 1466, Memorandum Opinion filed June 7, 2005. In addition, the Court notes that the retaliatory-discharge tort is not altogether duplicative of an FCA retaliation claim, because the state-law tort is broader. As discussed above, the FCA claim only protects conduct that is "in furtherance of" an FCA claim, while the retaliatory-discharge claim could protect actions (such as reporting violations of federal law only to an employee's supervisors) that might not be protected under the FCA. *See, e.g., Brandon, supra*. It is not clear at this point, therefore, whether under the facts Doyle may be able to prove at trial the applicable cause of action would be the FCA claim, the retaliatory-discharge claim, or both. One thing that appears clear, however, is that Doyle will not be able to recover damages for both claims, since the harm she has allegedly suffered (the discharge) is the same for both claims. *See Gandy*.

**DATED** at Albuquerque this 20th day of June, 2005.

BRUCE D. BLACK
United States District Judge

**Attorneys:**

**For Plaintiff/Relator**
Roger E. Michener
Vernon W. Salvador

**For Defendants**
Richard W. Hughes
Sean J. Flynn